We will proceed to our next case. Gray versus Pearson number 12-5. Council will be glad to hear from you. Thank you, Your Honor. May it please the court. Two aspects of the record of trial highlight how important it was for jurors to have an accurate understanding of the evidence of relative culpability. This is emphasized in Claim 3 under review by this court. The first is that jurors in Gray's case did not consider death sentences to be foregone conclusions. They deliberated for 12 hours at the sentencing phase. They rejected death sentences on three of the capital convictions. They rejected the prosecution's case for future dangerousness. And ultimately, they found Gray eligible for a death sentence only based on the vileness aggravating circumstance, which is a circumstance directly linked to the relative culpability of actors in committing the crime. Secondly, Gray's statement was the only piece of evidence jurors could rely on to determine who did what in the commission of the crimes and therefore to assess relative culpability. Now, the district court made two findings relative to Claim 3, which I'd like to address very briefly and then move on to the reasonableness of the state court decision. The first was that presuming Gray had asked for counsel and was refused within the confines of Edwards, that the existence of subsequent statements by Gray indicating that he had waived counsel was sufficient to find that the state court ruling could not be unreasonable. But these subsequent statements not only do not correct an initial refusal to provide counsel if it in fact occurred, but they should not even enter into the analysis of an Edwards violation. And this is under Smith v. Illinois, cited in our briefs, a Supreme Court case. And I quote from that case at page 100, an accused post-request responses to further interrogation may not be used to cast doubt on the clarity of the initial request. So we maintain that that is an unreasonable decision based on Smith. The second ruling that the district court made was, again, presuming that Gray was fed details from Dandridge's statement that was made in order to deflect culpability from Dandridge to Gray, that that evidence, that Gray could never show prejudice because that evidence would never come before the court. And the district court found that there were three sources of that evidence, three potential sources. One was Gray. One was Detective Peterman, the Philadelphia police officer who interrogated him. And the third was anybody else who knew about the circumstances of the interrogation. The court found that it was unlikely that Gray would testify, that Detective Peterman would concede that he had fed these details to Gray on cross-examination. And actually, in the third part of the court's, the third source that the court identified, it never addressed. All of this assumes that you've gotten past the first prong with respect to deficient performance. You're focusing on the issue of prejudice. But isn't that the problem here, that the court resolved the evidentiary contradiction based on the affidavits? And isn't that what we need to be focusing on here with respect to that decision? Well, you would focus on that, Your Honor, with respect to the state court decision. I was addressing the district court's ruling on this, and the district court actually presumed that he was fed this information and presumed that counsel was deficient for not finding it. Well, it did so simply to close the loop. But you don't even get there if, in fact, counsel was not ineffective, and, in fact, that credibility determination goes against your client. It does, Your Honor, and it goes, and that's within the court's finding of the reasonableness of the state court decision. The district court was willing to address this claim de novo. That was the only thing that I was responding to. But moving on to the reasonableness of the state court decision then, our argument is that the process within which the determination of facts were made in the state court is itself unreasonable, and the decision based on that process is unreasonable as well. Based on what case law or what standard are we supposed to gauge that? Well, cases cited in our briefs at pages. Do you have any Supreme Court case that says that a state court is prohibited as a matter of law from resolving this kind of a factual dispute based on competing affidavits and the other evidence of record without requiring an evidentiary hearing? Well, a court, a state court could resolve facts based on affidavits without holding an evidentiary hearing. We don't think that in this case it could based on the facts of this case. Why is that? Because of the direct conflict between the affidavits here and because of the process within which the court, the time at which the court made this ruling and the process. And let me just, like, if I can outline that briefly for Your Honor. Before you do that, and I don't want you to lose your thought, but could you just very, very briefly outline for us the practice in Virginia in particular? Well, that's exactly what I'm going to do, Your Honor, so thank you for that. Here in what the Supreme Court of the United States called the critical pre-application phase, Gray was without any means to compel evidence. And, in fact, the state courts were without any authority to compel evidence until a petition had been filed. Nonetheless, Gray files a petition based entirely on evidence provided to him voluntarily. And as required by Virginia law, states that he believes the taking of evidence is necessary for a proper disposition of his claim. But that's filed in the Supreme Court. Correct, Your Honor. Okay. Then what happens? The only responsive pleading that the warden files is a motion to dismiss Gray's claims as a matter of law. And, as required by Virginia rules, says the taking of evidence is not necessary for a proper disposition of this claim. And do I understand that that happens in basically every case? Pretty much, Your Honor. Pretty much. Yes. Capital or non-capital? Well, only the death sentence cases are before the Supreme Court of Virginia. I see. The non-death cases start out in the circuit court. Correct. The post-conviction. Yes. Okay. The warden also argues that an evidentiary hearing is not permitted in this case, and that any discovery would be premature until the court had ruled on whether Gray's allegations should be dismissed as a matter of law. All right? So Gray then asks the court to refer the matter back to the circuit court, which is required in order to have an evidentiary hearing or any kind of discovery or compulsory process. The court refuses all of those requests, including Gray's ability to present rebuttal evidence as a counterweight to evidence that the warden No, I'm a little unclear. You're still responding to Judge Diaz, and I appreciate that. But I need to understand whether you're talking about this case or the general practice in Virginia. Both. Both. Okay. Yeah. All right. Well, actually, I should say the rebuttal evidence is in this case. I can't say that that's a general practice. So I can stop there. That's the general practice. Okay. In this case, the court refused to accept any rebuttal evidence from Gray, and then granted the motion to dismiss Gray's claims as a matter of law based expressly on allegations provided by the warden  Well, are you saying that the Supreme Court refused to consider Gray's allegations that were part of the verified petition? Absolutely. Yes. How do we know that? By its decision. It doesn't reference, for example. Well, I understand there may not be a reference, but I think Judge Diaz is asking how can we have confidence that the court didn't read something? Not simply on the basis of the court's failure to mention something. Well, Your Honor, I guess I can't represent whether the court read it or not. But I can represent courts in Virginia stand by their written rulings. And, for example, as a matter of fact, the warden agrees that the state court ignored the affidavit of defense investigator Melvin Knight, which is critical to Claim 3, and agrees that the court ignored the evidence from defense investigator Judith McClendon as well. Well, with respect to the latter, I think the reason for that was because it was not timely. With respect to the former, as I read the affidavit of your investigator, it said nothing more than what was already part of the verified petition. It simply parroted the same set of facts and allegations that your client made as part of that verified petition. And how do we know that the court did not consider the verified petition? They must have. Well, you know, Your Honor, I think. First of all, I don't think it's simply parroted. It confirmed. So Gray makes these out. Well, the investigator has no personal knowledge. He wasn't there when the police interrogated your client, and he allegedly confessed to these crimes. He's simply reciting what your client told him about the circumstances of the confession. How is that helpful? That's absolutely correct, Your Honor. But the claim is an ineffective assistance of counsel claim for failure to investigate. So what Gray does is excuse me. What the affidavit from Melvin Knight does is confirm that Gray communicated this information to the defense. So what you're saying basically is the more times he tells it, the more likely it is to be true. Well, you know, I don't know if that's true or not, Your Honor. But the fact that he recites this account shortly after his arrest is clearly helpful evidence or evidence confirming his allegations. And the warden's response to that is that he never said he never told the defense these things. That's the facts that the Supreme Court of Virginia relies upon to dismiss the claim. But the warden's response through the trial defense lawyer, his affidavit, not just the warden saying so, but the trial defense lawyer saying so. That's the evidence that they proffered. They say Gray didn't say this. Melvin Knight and Gray say they did. Well, I guess we get back to this question. Why isn't that evidentiary record as it stands sufficient for the Supreme Court to have decided as a matter of law that you didn't make out a claim for ineffective assistance for counsel? Well, because if if Gray is right, if Gray's facts are presumed true, then counsel was on notice of this very different factual scenario in which the interrogation took place. And counsel's investigation is woefully deficient in not looking into the allegations that Gray made. Could you spend just a second explaining, again, looking at Virginia procedure? How does it happen that the warden gets an affidavit from trial counsel in these circumstances? Your Honor, I've been trying to explain that or trying to explain the import of that for years. And what happens is just as I laid it out, there's only the only pleading filed is a motion to dismiss the claims as a matter of law.  And I think what's happened here is that and what's objectionable and unreasonable is that the state court has converted a motion to dismiss by accepting evidence into a motion for summary judgment. And yet left out the entire process between motion for dismiss and summary judgment. No discovery, no evidentiary hearing, no resolution. In some states, in the federal system, defense counsel worry a lot about the circumstances under which and the procedures pursuant to which he or she provides information in a post-conviction attack on a conviction. And yet I don't quite understand how it works in Virginia. Can you enlighten us a little bit? Does the warden just call the lawyer and say, as you expected, allegations of ineffective assistance of counsel have been lodged against you? Here's a draft affidavit. Make whatever corrections you need to and send it back. How does it work? I think that's the way it worked in this case, Your Honor. And I can tell you that. And what do the Virginia ethics authorities say about that, if anything? They have recently said that is objectionable ethically. Recently they've said that? Yes. Have the practices changed? I will see. Let me ask you a question regarding at least the posture of the case in light of a case you haven't mentioned, Penhose. And it seems to me, are you arguing, it doesn't seem like you're taking a position that the Supreme Court of Virginia's decision was an adjudication on the merits. And so if it's not that, you then slide into, if it's not an adjudication on the merits, then you get to deal with the unreasonableness of the facts. But if it is an adjudication on the merits, Penhose would seem to just say there will be no evidentiary hearing on the federal district level. Right. What is your contention? And you don't seem to argue the perspective of whether it's an adjudication on the merits. Right. Well, you know, the state court did dismiss this claim. We think, however, that the process within which it. But it is important from Penhose as to whether it was done, the state court represented an adjudication on the merits or not. Penhose goes to the proposition that if it's not an adjudication on the merits, then the federal courts can then conduct an evidentiary hearing. How do you get around that? Well, the courts could also conduct an evidentiary hearing if the petitioner hasn't failed to develop the facts in support of its claim. So is that where we are in terms of dealing with their unreasonableness? So basically you basically conceded or at least accepted there's an adjudication on the merits, but it must then reach that. So we don't need to deal with this question of whether it's an adjudication on the merits. You've already gone to the proposition. We will take that and then now go to that second avenue, which is they were so unreasonable facts. Right. Well, I think the effect is is the same as if there was no adjudication on the merits. But our focus is on whether the decision is based on a reasonable determination of facts. I see my time is. Well, you haven't dealt with that independent counsel business. The other part of the argument is there. Yes. If I could take a minute from my other time and just let me respond to it. Go ahead. Martinez against Ryan created a very narrow exception through which defaulted claims should be considered by the federal court. And the exception that it created is directly linked to the performance of state habeas counsel. There's a causal connection between the deficient performance of state habeas counsel and the defaulted claims of ineffective assistance of trial counsel. Have you identified any defaulted claims here? No, Your Honor, because we're conflicted from doing that. I think the warden might want us to define the universe of claims that Mr. Gray might raise, but that's exactly what we can't do. And and the warden argues that it's somehow tied to a constitutional violation. I think there's nothing that in the conflict of interest that requires the finding of a constitutional constitutional violation. And I'll reserve the rest of my time before you sit down and we're going to give you all the balance of your rebuttal or all of your rebuttal. But what's your best case in the year since Martinez came down less than a year. For what you're asking for here. In other words, is there any circuit that has taken that next step beyond Martinez? Well, Your Honor, in our research of Martinez, we didn't find any cases where the federal petitioner was required to rely on the very state habeas counsel. It would be like fair enough, like appointing trial counsel and state habeas to represent. And you just couldn't persuade Judge Tringa. You know, Your Honor, I can offer my. Well, no. Thank you. Thank you very much, Mr. Lee. Thank you. We'll hear you in rebuttal. It's the delegate. Good morning. Good morning, Your Honor. Thank you. Please, Court, Your Honor, we're here today to ask the firmness of the district courts holding on both of the two narrow points on which certificate appeal bill is granted. The district court correctly found that the decision by the Virginia Supreme Court on the deficiency prong of the effective assistance council claim under claim three was a reasonable determination of the facts. There is no basis to assume that the Supreme Court did not consider the affidavit. And I think Mr. Lee is paraphrasing a little bit my brief in claiming that I've acknowledged that they didn't consider it. I argue they gave it no weight and I think correctly. So did the district court approach this from the perspective? The question I asked earlier as to whether the Supreme Court of Virginia had made an adjudication on the merits. Absolutely. And so then that's how we get into the second prompt, which it seems as though they have basically conceded. This is an adjudicate. It was an adjudication of marriage, which essentially say you typically not going to get a federal evidentiary hearing only to these very limited basis that's presented here. This unreasonableness of the facts. Certainly the Supreme Court of Virginia. In describing claim three listed all the arguments and the assertions that Mr. Gray had advanced in the state petition to argue that his state trial council had made an insufficient investigation. Let me ask one question on that. And I think I want to just want to understand Penholzer because it seems to be a very limiting case in terms of what can the district court can do where you have these merits that have been adjudicated. Is it your perspective that the court could still hold an evidentiary hearing on this second part? At least in terms of whether or not there's an unreasonableness of facts or you just can't hold one. Let me clear. I understand the second part. You talk about the prejudice prong or. That's right. Dealing with whether there's an unreasonable determination of facts in light of the evidence that was presented at the state court proceeding. Well, the certificate of appeal bill granted by Judge Schrenger was only whether there was an unreasonable determination of facts as to finding whether there was deficiency in trial counsel's judgment. And is that an evidentiary hearing? That's what I'm asking. Because Penholzer seemed to indicate that you don't get an evidentiary hearing as an adjudication on the merits. But I'm asking that even if there's an adjudication on the merit, do you get an evidentiary hearing on the IEC aspect of it to determine the unreasonableness of the facts? Which seems to be what's being regarded here. My understanding after Penholzer is you would only get an evidentiary hearing relative to the question of reasonableness on facts if you had also come forward with evidence rebutting the presumptions under E that the findings of facts in the state court were entitled to deference. Which you would have had to establish by clear and convincing evidence that their findings were incorrect. If the findings are incorrect and the factual findings are not entitled to deference, then the issue before the federal court would be whether there was still a reasonable determination of fact absent that deference to the facts. But that I don't think is the case we have here. There's no allegation that the findings were... So is he entitled to any evidentiary hearing in terms of that disputed facts that he alleges existed at the Supreme Court level? On the record of this case, no, Your Honor. The dispute of facts was resolved by the Supreme Court following its regular procedures and Virginia law. It's entitled to deference... But they didn't hold an evidentiary hearing to resolve those disputed facts. I mean, he just did it on the record, I guess. Yes. That's common practice in habeas cases in Virginia. So when does he get a hearing? When does he get the hearing? He can't get it in federal court because now you say that's an adjudication on the merits. He didn't get it in the state court. When does he get an evidentiary hearing? He doesn't always get an evidentiary hearing in collateral review. Collateral review is a secondary review to the main stage. I think Judge Wynn is sort of asking a similar question to what I asked, if you could take a second. Yes, sir. When in Virginia does capital defendant or collateral review get an evidentiary hearing? When the Supreme Court of Virginia determines that it can't make a resolution of a dispute of fact based on the record before it. It would refer the matter to the circuit court for hearing, witness, discovery, so forth. I'm sorry. It's a matter entirely in the discretion of the judges of the Supreme Court of Virginia. I don't know this measure by discretion, but it's their decision. What could it be if it's not discretion? And I mean, I mean, you wouldn't know, I guess, but that doesn't stop me from asking. Do they vote? Is it is it like four to three? No evidentiary hearing. Four to three. Yes. An evidentiary hearing. When is there an evidentiary hearing? Their orders for evidentiary hearing don't let me answer the procedure. But of course, the evidentiary hearing comes when the Supreme Court determines that based on the record it has, it can't make a decision on a disputed issue of fact. Now, as I'm sure you're aware, one of the most striking, there are lots of striking differences between state practice and federal practice. This court and many other federal courts of appeal appeals have held that in a 2255. A defendant says under oath. I told my lawyer to appeal and he didn't. And the lawyer submits an affidavit to the U.S. Attorney's Office that submits the affidavit to the district court. The lawyer says he never told me to appeal. What this court has held in that situation. Is that the district court has got to hold an evidentiary hearing. You can't choose when a when an inmate or a convicted offender says I told him to appeal. You can't choose an affidavit. And I'm a little curious to understand the Virginia practice that seems to vary from that. Well, the judges choose. I think they can choose very easily in this case, your honor. What they had in this case was an affidavit from both trial counsel affirming that they had investigated the circumstances of confession and what they found. And they had an affidavit from Mr. Knight, which recounted only unsworn statements from Mr. Gray. It was hearsay. The statements weren't admissible anyway. Even if you consider it a little late. Knight's statements weren't offered to prove the truth. They're offered to prove that Mr. Gray advised the defense team of certain information. That's what I understood him to argue now. Well, and his affidavit. Do you not understand that? He made that statement, judge. I don't think I don't think the affidavit bears the weight he puts on it. Mr. Knight says he spoke to Mr. Gray. Mr. Knight never says he communicated any of this to trial counsel. Isn't that the problem? That Mr. Knight never communicated trial counsel, possibly a problem if Mr. Gray said that. But that's not a Strickland issue. And it's not. It doesn't justify. Discovery. Deposition of night. Deposition of trial counsel. To try to uncover all that. And Mr. Gray. Also, it's been referred a couple of times that Mr. Gray gave a verified petition. I think it's important to notice what he swore at the end of his petition. He did not claim personal knowledge of anything in that state petition. He claimed it was true. The best of his information and belief. So he's not claiming personal knowledge even of what his petition alleged to took place with respect to his claim. Are you now suggesting that the Virginia Supreme Court rejected the petition because of lack of personal knowledge? I'm not suggesting they rejected it. But I'm suggesting in resolving a conflict between a hearsay affidavit and a petition that doesn't claim any personal knowledge. And personal knowledge of his true trial counsel. Consistent with the testimony of Detective Peterman and the other evidence in the record. It's a reasonable adjudication to find that the events were as trial counsel described them. You know, Judge Stringer was obviously troubled by this. He made some statements which you took umbrage or the state took umbrage with respect to the fact that necessarily in order to resolve this petition, the Supreme Court had to make some kind of credibility determination. And found Gray's evidence to be incredible in light of the contrary evidence from trial defense counsel. And the investigator's testimony at trial rejecting any coercion or feeding of evidence to the petitioner. You dispute that, but that's got to be the case, right? They've got to make, they've got to pick one version of the facts over the other. And perhaps it was reasonable in this circumstance, but I hope you can understand the concern that the court has as to where that line is drawn. And perhaps I'm putting too much weight on the use of the district court's description of the decision as a determination of credibility. I don't know that in deciding whether to give weight to a hearsay affidavit or not, the Supreme Court needed to make a determination of credibility as whether the conversation took place with Mr. Knight, whether it's an accurate description of the conversation, or whether it's simply hearsay and not entitled to as much weight as personal knowledge. Well, that makes a difference though, because if you're talking about evidence that is incompetent, then there's no credibility determination to be made at all as opposed to a fight of dueling affidavits, which I suspect at some point might well warrant an evidentiary hearing. And that's the distinction I was trying to get at in the point in the brief, that if by credibility you understand that you're giving weight to the hearsay statements in Mr. Knight's affidavit and just finding them less credible than the statements by trial counsel, I don't know there's anything in the record to infer that that's what the Supreme Court of Virginia did. How do we know? We don't know. We don't know. And that's why I took issue with district court. Is that an unreasonable determination of this habeas petition? I'm sorry, is what? Is the fact that we can't tell how this issue was resolved unreasonable? No. The question of whether the determination of facts is unreasonable or not is only an evaluation of the facts they found based on the evidence that was presented to them. The process by which they reached that determination is not part of the analysis of whether or not they were an unreasonable determination of facts. Well, that's the nub of where we're going with this, because before this death penalty act, of course, the state courts were required to have a full and fair hearing. And since then, we've had a split with different circuits. Some circuits say, well, that simply means you've got to defer to the state, regardless of the procedure, the process. And others say, no, if there's no hearing, no evidentiary hearing, then the court should go ahead and conduct a hearing, at least some type of evidentiary hearing, where you could allow things like discovery, which was not allowed here. Of course, the Fourth Circuit, we've sort of gone down the middle of this road, and this is where we get into the argument that you're presenting today, but it remains a major problem, at least in trying to determine to what extent an evidentiary hearing is necessary in cases like this, where, as you say, the process below is the Supreme Court doesn't allow one. It makes credibility decisions, no discovery, and there are circuits that say that's fine. Others say no, and that's kind of before us, and I'm not sure how much we're bound in terms of what our precedent is. As we pointed out in the brief, there are circuits that have previously held that the failure to address particular testimony or provide particular procedures may make the decision unreasonable that have since reversed their holdings after Penholster and after recent cases in the Supreme Court. What I suggest in this case is that the case is- What it leaves us with is an opportunity where an individual facing a death penalty will not have any evidentiary hearing review. In other words, it takes away the federal court, from your interpretation, ability to do anything about a decision from a state court where there's no evidentiary hearing opportunity, no discovery, no, I guess, due process from the perspective of the defendant being allowed to present evidence, not that he's going to prevail, but allowed. It's just the fairness of the hearing process, and the question is, is that completely gone now? Well, one evidence that he was allowed to present and chose not to was any claim of personal knowledge of what happened in that interview room. Clearly, he and Detective Peterman were the only people present at the time. Detective Peterman testified at trial to what happened. The Supreme Court had the benefit of that. Mr. Gray never gave even an affidavit to the state Supreme Court claiming that, I know what happened, this is what happened. So, in this case, we submit the Supreme Court of Virginia did make a reasonable determination of facts. It had the absence of any claim of personal knowledge of what happened by Mr. Gray, had the trial record, had trial counsel's affidavits, and a hearsay claim by Investigator Knight. Well, had he- I'm sorry, no, please go ahead, sir. Had he done just that, what you say, is submit an affidavit based on personal knowledge, I don't suspect that you'd be making an argument any different than the one you're making now. I think you'd still say that the Virginia Supreme Court was within its rights to resolve that disputed issue of fact on this record. Is that right? I don't know what he would say in his affidavit, in that hypothetical, but- Well, he said the very same thing he says in his position. If the Supreme Court of Virginia had found that there was no merit to the claim, that if their findings were based on the record before them, that that would be reasonable. Reasonableness doesn't mean that they were correct, of course. If there's any support for their finding in the record before them, the Supreme Court has said that's reasonable. Certainly, that is true in this case, and I think would be in the hypothetical. Does the Virginia post-conviction process differ, capital versus non-capital? Just very briefly, with regard to evidentiary hearing. It doesn't differ with regard to evidentiary hearing. The non-capitals are filed in the circuit court- Right, and the judge has the discretion- And the judge has the discretion to conduct a hearing. And if the judge doesn't conduct a hearing, then there's an appeal to the Court of Appeals, correct? To the Supreme Court of Virginia, to civil- To the Supreme Court, to review the exercise of that discretion, correct? Yes. And so the Supreme Court can reverse and remand for a hearing. If that's one remedy to have, yes. But in the capital case, there's no review of that exercise of discretion by the Supreme Court of Virginia, correct? There's no second hearing deciding their discretion. They, I'm sure, review their own discretion. Now, on the question of Martinez, did you join in urging the district court to appoint independent counsel? No, Your Honor. You actually opposed it, didn't you? Yes. Do you regret that today? No. Okay, so how do you get around the seeming implication of Martinez? I mean, there's no dispute about what Martinez holds, right? I don't dispute that Martinez gives a narrow excuse. In states like Virginia, the first post-conviction is the equivalent of a direct appeal. For the purpose of ineffective assistance? For purposes of ineffective assistance accounts. And so in Virginia, in states like Virginia, where a federal district judge requires the lawyer who brought the first post-conviction, it's the equivalent of appointing the same lawyer who brought the appeal, but who could not raise ineffective assistance of trial counsel. No. Where did I misspeak? Where did I misspeak? You misspoke, I think, in the same point that Mr. Lee has moved over in what Judge Trenga required habeas counsel to do. Judge Trenga did not require habeas counsel to make Martinez' argument that certain claims were excused. Judge Trenga's order – That's not what I said, but go ahead. I don't want to interrupt. Well, and it's not the equivalent of having him argue – having trial counsel argue his own ineffectiveness, because what Judge Trenga called upon habeas counsel to do was not to claim or argue their ineffectiveness as state habeas counsel. He asked them to identify ineffectiveness by trial counsel, the very thing they were appointed to do as state habeas counsel. All the order requires them to do is identify any other claims of ineffective assistance of trial counsel that had, in fact, not been presented in the state habeas proceedings. They weren't called upon to argue their own ineffectiveness, to establish a Martinez claim, or to prove that any of these defaulted claims were excused. The order required only that they identify if there were, in fact, any such claims that might be subject to a Martinez analysis. But in order to do that, at least implicitly, they would have to be conceding that they failed to raise them when it was first appropriate to do so. No, the order, I think, is very clear. Well, what Judge Diaz just said is very clear. I mean, the order says what it says, but in order to get that result, they would have to concede that they failed to raise the issues when it was first appropriate to do so. I don't, you know, regardless of what the order says, that's the reality of what these were. They would be identifying issues that weren't raised in the state habeas. Well, how is that any different from the scenario that Judge Davis presented? Because the mere fact that he didn't raise a claim can't mean without more that he was ineffective. We have appellate counsel who all the time are encouraged not to bring every conceivable claim on appeal. We say that's the hallmark of good appellate advocacy, to focus on the strong claims and even not bring weaker claims. If all they're doing is enumerating the claims that were, in fact, not presented. I'm not sure that venerable principle applies in death penalty cases. But really, even apart from that, so why don't you complete your response to Judge Diaz's question? You're asking counsel to identify how he was ineffective in the first state post-conviction proceeding. Isn't that exactly what you're asking counsel to do? It's not. I've seen him out of time. If I may leave to expand. Absolutely. Because for the reasons I said under Jones and under other cases about the selection of stronger or weaker claims, it's our position that it's not per se ineffective assistance of habeas counsel to not have included all potential claims. And the question is, does it take independent counsel to make that judgment? That's the question. With respect, Judge, the question, whether it takes independent counsel to then argue whether they should be excused for habeas counsel's ineffectiveness, is a step that Judge Trengaz didn't get to. He only asked them to define whether there are any such claims. What you're positing under Judge Trengaz's order is that they would identify, hypothetically, three claims that they didn't raise, that they should have raised, and then Judge Trengaz was going to excuse them from the 2254 and then bring in new counsel? Is that what you hypothesize? I think that's what Judge Trengaz was hypothesizing, that he would, if there were in fact defaulted claims. There's no judge out there who's ever done such a thing, right? Of course, Martinez is, as I say, only a year old or not yet a year old. But there's no authority for this kind of dual process where you bring in state post-conviction counsel, have them invest in doing the work to investigate, to bring a claim, a series of claims, amend the 2254 petition, maybe even incur considerable costs, including the cost of investigating their own ineffectiveness, and then persuade the federal district court that, in fact, the claim they've now identified, hypothetically, is of sufficient substantiality under Martinez, that now the federal district court's going to go out and look for new lawyers to now step in? And would those new lawyers be confined only to the claims that have been identified by the now arguably ineffective state post-conviction counsel, or would they be free to expand the record and go look at other claims? I mean, it boggles the mind. If I may respond, Your Honor? Please. Two points. The court first asked if there were any cases where this is done. The only case I'm aware of where it's been raised is the Juniper case that's presently pending with Judge Gibney. He's waiting to see what we do. Well, no, he ruled that there was no conflict of interest in finding and requiring identification claims, and in the absence of claims, declined to appoint additional counsel. Whether it's a workable model to appoint extra counsel on the side to do these other claims or not, that's the remedy Gray asked for. What's the harm? He didn't ask for his counsel to withdraw. What would be the harm of simply appointing counsel? You know, I marvel at the fact that these cases, these murders that took place in 2006, were in 2013 arguing these issues here, and it occurs to me that much of this delay, when we think about it, I mean, what would have been the harm? I mean, even if we decided in this manner, basically what happens, you go back and have now an investigative report, have an evidentiary hearing, and then we move forward from there. Had that been done, there, we'd be on totally different issues. This would have moved along further. And so I'm just miffed in light of Martinez, which seems to be pretty clear. There's got to be a conflict of interest. Judge Diaz has pointed it out, and I know you've articulated the trial judge's, you know, differentiating views on this, but nonetheless, that conflict is there. What's the harm in simply just appointing counsel to look at, if it's a limited, and then make a determination whether it's going to be a narrow-limit investigation or it's going to be a broader one, but make that determination? It comes up, that issue's not here, which meant to me why you opposed it. I mean, did you see, this would have been done. I mean, so I don't get it. I mean, to fight these little things along the way that you basically can understand what the result's going to be, but nonetheless, the law says it's just not right to have a counsel below to come up and raise an ineffective assistant counsel claim against himself. That doesn't seem to stand. Why not just have the independent counsel look at it to see if it was ineffective? That's the end of the question. Especially when the Commonwealth's not paying for the lawyer. It bothers the mind. Sometimes you fight these battles, you wonder why. I mean, you're adding to, if you have an interest in not delaying, you're adding to it. I mean, and now what's next going to come up? You're going to fight all these little battles along the way when if you would just stand back and say, okay, what's the harm? Go ahead. It seems reasonable, in particular in light of Supreme Court law that we are bound by. We can't circumvent that, and we have to interpret it in a light that we think is going to make sense. The reason we had opposed the motion is the same reason that Judge Trengo failed to grant it. We thought that in the facts, as played by Mr. Gray, and in the absence of any indication at all that there were any such defaulted claims to present, that it was unnecessary to appoint independent counsel to pursue, as Judge Trengo put it, hypothetical claims. I'm not saying that you didn't have at least some reasonable thoughts in which to go with it, but it just seems to me that if you looked at it and said, well, what are we wrong on this? Then what's going to happen? It's going to come back and we have to do this. Why don't we just go ahead and do one, and then what we just said is proven out. That's the end of it. That's what I meant when I said, what is the harm? But you don't need to respond to that. I think I kind of understand. I see I'm quite over my time. If there are no additional questions, I'd simply ask leave to pray for affirmance of the district court. Thank you very much, Mr. Dolligan. We very much appreciate your presentation and appreciate the important work you do on behalf of the Commonwealth. Thank you, Judge. You have some time left, Mr. Lee. I can make one brief point, and that is we said, as the Commonwealth had said, that we believe the state court ignored the evidence that was presented by Gray. However, if there was a credibility determination, it was done within a process the district court described as depriving Gray of any opportunity to develop a factual record, to test disputed issues of fact through the type of adversarial process historically thought essential to the truth finding function of a court. Mr. Lee, in this case, did you get and are you confident that you got trial counsel's entire file? We got a file from counsel. I can't say whether it's the entire file or not. We did get files from counsel. I don't want to put you in a difficult spot, but you're hesitating in a way that I didn't anticipate you would hesitate. You don't have any reason to think that you didn't get everything. I have some reason. You do? I do, and here's why. Because in the affidavit that trial counsel provided, they said that everything in the affidavit was based on their personal knowledge or records kept in the ordinary course of business. And some of the things they say in there are we dispute and disagree, and we do not have records that support the things that they say in their files. And they did not produce those records. They did not attach those records. Let me see if I'm understanding. You're saying that there is information provided in counsel's affidavit submitted by the warden for which you can find no source material in the file you received. Correct. So the most innocent explanation for that, of course, would be there's information in counsel's head that's not recorded anywhere. Correct. Other than in his affidavit, in the affidavit. Yes, Your Honor. And the only thing I'd add to that is that they also add that the information comes from records kept in the ordinary course of business. I just don't know what those records are. But you've received all the records kept in the ordinary course of business because you've received the entire file. Well, you know, if I received the entire file. If I did, then I did, yes. But I don't know that I did because I don't know whether there are some records that they're not citing that they're relying on, but they didn't provide to us. And to be perfectly frank, I don't have a reason to know that they don't. I couldn't sort of identify something that they don't have. I just can't say that we do have the entire file. Thank you, Your Honor. Thank you very much. Before you said it, I want to make sure I understood something you said. You acknowledged that the Supreme Court of Virginia's decision was an adjudication on the merits and then moved from that posture to say that, well, nonetheless, it was unreasonable in light of the records. So the first prong of that, at least in terms of Penhoser, were not in that venue of saying this is not an adjudication of merits. Therefore, you get a full-blown hearing. It wasn't an adjudication of merits, so the hearing is somewhat limited. Well, Your Honor, I would say that it was not an adjudication on the merits in the same way that in Winston the case was not an adjudication. Oh, that's the first I heard that one, the first I heard that. Because what I asked you before, I asked you was that the Supreme Court's decision an adjudication on the merits, and you said, yes, but nonetheless, we may still be entitled to an evidentiary hearing if there is some unreasonableness in the Supreme Court's decision in terms of its facts there. And I said, okay, so then we move forward. So that was why I asked that as a clarifying question. And this would be my explanation, is that our argument has been that the federal court is not restricted in its ability to grant relief because the state court decision was based on an unreasonable determination of facts. And that's all of our process argument. Now, in Winston, the court said that there was this claim presented, and it was decided by the state court, but it didn't have this critical piece of evidence that was in the garage of some teacher of Winston's. Now, in our case, there was evidence, and we presented the evidence. We say the state court ignored it. And so it might as well have been in the garage of a teacher in terms of the state court's consideration of it. And in that sense, the case was not adjudicated on the merits. Well, the state says, of course we don't know, but the state surmises that it wasn't ignored. It was simply discounted. There's a difference, right? No, Your Honor, and here's why, and I'm glad you asked that question. Because the state court says it was discounted because it's inadmissible hearsay. And this is exactly what we were talking about before. As Judge Davis pointed out, it wasn't presented to prove or establish what happened in the interrogation hearing. It was presented to prove deficient performance or to confirm grace statements and contribute to a deficient performance finding. Now, the warden moved to strike it on the exact arguments he represented to you today and said it's inadmissible hearsay, and that's at appendix pages 731 to 736 and 748 to 752. The Supreme Court of Virginia denied that motion. So the state court did not consider it inadmissible hearsay. They simply ignored it when they ruled on Gray's claim. Well, then they couldn't have ignored it then. It must have factored in somehow. It was just discounted, right? The only way to ignore it is to consider it to be incompetent evidence. Well, no, that's the unreasonable part of ignoring it when it's not incompetent. And in Miller L., there was testimony presented, live testimony presented in court that clearly came in. The state court simply ignored it when it made its decision. And that was found as a potential basis for finding the district, the state court decision unreasonable. Mr. Lee, thank you very much. Thank you, Your Honor. We will come down to Greek Council and move immediately to our third and final case.
judges: Andre M. Davis, James A. Wynn, Jr., Albert Diaz